## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**TOMMY BOYLES;  SIERRA ELLIOT**
**and JENNIFER BIVENS**                                          **PLAINTIFFS**

v.                                    **No. 3:21-cv-92-DPM**

**CITY OF BLYTHEVILLE, ARKANSAS**
**and RICKY JEFFERSON, Chief, In his**
**Official and Individual Capacity**                    **DEFENDANTS**

### ORDER

1.      This case is about three separate dog attacks in Blytheville, Arkansas.  Sierra Elliot, Tommy Boyles, and Jennifer Bivens were the ones attacked.  Each was injured.  They have sued the city and Assistant Police Chief Ricky Jefferson.  They bring claims under 42 U.S.C. § 1983, the Arkansas Civil Rights Act, and state tort law.  The parties have filed cross motions for summary judgment.  Many of the core facts are undisputed.  Where there is a dispute, the Court takes the record in the light most favorable to the non-movant.  *Oglesby v. Lesan*, 929 F.3d 526 532 (8th Cir. 2019).

2.      **Sierra Elliot.**      Elliot was attacked in October 2020. She stopped her vehicle to help a young boy chasing after a light-brown pit-bull mix.  The dog's name was Duke.  He had gotten off his leash. Shortly after Elliot got out of her vehicle, Duke mauled both of her thighs.  The boy helped pull Duke off her and then left with the dog.

Elliot called a friend to take her to the emergency room. Elliot's mother met them there. She described her daughter's injuries like this: "There were nickel size chunks and pieces of her flesh and muscle that looked like ground up hamburger meat." *Doc. 38-6 at 1*. Elliot underwent a three-and-a-half-hour surgery to repair her thighs. The risk of rabies, which can be fatal, remained. The doctors told her that she would need to undergo four rounds of rabies vaccines if the dog's vaccination or rabies status couldn't be determined. Elliot's family found Duke's owners, Tony and Michelle Turner, later that night.

The next day, the Turners told Elliot's mother that Duke had not been vaccinated for rabies. The hospital recommended that Duke be euthanized and tested to get the quickest possible rabies results. Elliot's father called the Turners and asked them to put Duke down for testing. They agreed; and Elliot's mother informed Animal Control Officer Dustin Wardlow of that agreement. But he hadn't spoken with the Turners yet. Instead, he impounded Duke for a ten-day quarantine in accordance with city protocol. Later that night, Elliot began her first round of rabies shots; that required multiple shots around her wounds and in her arms. Elliot presses she wouldn't have had to endure these shots if Animal Control had contacted the Turners sooner.

Animal Control quarantined Duke for thirteen days. He showed no signs of rabies. Animal Control neutered him and vaccinated him

against rabies.   Officer Wardlow said Duke was "very hostile and violent" before and during quarantine.   *Doc. 38-7 at 3*.   The Turners reclaimed Duke after the quarantine period.   Animal Control instructed them to keep Duke indoors.

3.   **Tommy Boyles.**   Duke attacked Boyles about five months later in March 2021.   Duke ran in his garage and bit him.   Boyles fought Duke off and closed the garage door.   His wife took him to the emergency room.   Animal Control Officer Katherine Davis met with Boyles at the hospital.   She reported "significant damage to his lower right leg, right forearm, and left pinky finger."   *Doc. 37-5 at 1*. Officer Davis contacted the Turners the same day.   Mrs. Turner said Duke had gotten out of the door as she was leaving town; but she had put him back inside before she left.   After Mrs. Turner returned home, Officer Davis cited her and took Duke.   Animal Control euthanized Duke in April 2021.

Boyles, like Elliot, waited more than a week to learn of Duke's rabies or vaccination status.   He also claims he wouldn't have been attacked had Animal Control euthanized Duke after he attacked Elliot.

4.   **Jennifer Bivens.**   Bivens was attacked in November 2021 while she was getting groceries out of her car.   Her neighbors' dog, a black German shepherd, started barking in her direction.   It then ran up and bit her in the left buttock.   Blytheville Police Officer Seth Rounsavall responded to the scene.   His body-worn video camera

shows a fist-sized bite mark with an open wound in the center. Officer Rounsavall recommended that Bivens "go to the ER and get it checked out." *Doc. 38-3 (Ex. I) at 00:32-40*. The dog wasn't impounded because the Animal Control unit wasn't available and the animal shelter was at capacity. Officer Rounsavall cited the neighbors for an animal code violation. Animal Control later advised the neighbors to quarantine the dog at home. Days later, Assistant Chief Jefferson informed Bivens's cousin, County Sergeant Glen Teeter, that Animal Control told the neighbors that "under no circumstances should that dog be outside." *Doc 38-3 (Ex. H) at 02:44-48*. Assistant Chief Jefferson also testified that "officers went by several times to recheck on [Bivens's] case." *Doc. 37-1 at 5*.

Bivens says that she wasn't advised about the risk of rabies until weeks after the attack. She also says the dog remained at large and that she was forced to sell her house out of fear for her children. Neither she, nor anyone in her household, was attacked again.

**5.**    Elliot, Boyles, and Bivens allege that Assistant Chief Jefferson and the city failed to protect them from the risk of unvaccinated dog attacks. They claim violations of their Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983.

First, their Fifth Amendment substantive due process claims fail as a matter of law. That Amendment's Due Process Clause applies only

to the federal government. *Truong v. Hassan*, 829 F.3d 627, 631 n.4 (8th Cir. 2016). And no federal defendant has been sued.

Second, their Eighth Amendment failure-to-protect claims fail as a matter of law. Elliot, Boyles, and Bivens weren't incarcerated. *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996). They also hadn't been adjudicated guilty of any crimes. *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). City officials therefore had no Eighth Amendment duty to protect them from private violence. *Ibid.*

Last, the plaintiffs' official capacity claims against Assistant Chief Jefferson drop out because they duplicate their claims against the city. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

**6.** The deep issue is whether, under the Fourteenth Amendment's substantive due process guarantees, city officials had a duty to protect Elliot, Boyles, and Bivens from private violence. The general rule is that states aren't required "to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989). But substantive due process does require states to protect people in two situations: when an individual is in state custody; and when the state created the danger. *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).

This case presents neither situation. Elliot, Boyles, and Bivens weren't in custody. And the state-created-danger exception doesn't

apply for a couple reasons. First, Animal Control didn't create a risk of unvaccinated dog attacks greater than those that already existed. That is, the city's actions were "the same as if it had done nothing." *S.S. v. McMullen*, 225 F.3d 960, 963 (8th Cir. 2000) (en banc). There's no evidence that city officials knew of Duke before the first attack. Elliot faced the same risk of contracting rabies whether city officials quarantined Duke or not. And Boyles faced no greater risk of being attacked after city officials returned Duke to his owners. Boyles was in the same position he would have been in had city officials never impounded Duke in the first place. *Compare Kruger v. Nebraska*, 820 F.3d 295, 302 (8th Cir. 2016). In fact, Boyles faced a lesser risk of contracting rabies after city officials vaccinated Duke. Bivens was bitten by a different dog. And there is no evidence that city officials knew about this dog beforehand or that they "intentionally or arbitrarily cut off emergency services to [her]." *Anderson ex rel. Anderson v. City of Minneapolis*, 934 F.3d 876, 883 (8th Cir. 2019).

Second, nothing in the record shows that the city or Assistant Chief Jefferson acted with the required degree of culpability. The state-created-danger exception only applies if a government official's behavior shocks the conscience. *Hart*, 432 F.3d at 805. Mere negligence, and even gross negligence, "can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights." *Ibid*. Assuming that, as plaintiffs argue, city officials departed

from established procedures in response to these dog attacks, those departures don't give rise to a substantive due process violation. *Anderson ex rel. Anderson*, 934 F.3d at 883-84.   The failure-to-protect claims under § 1983 therefore fail.

7.     For the same reasons, Elliot's, Boyles's, and Bivens's failure-to-train claims under § 1983 also fail.   The city can't be liable because no city official, including Assistant Chief Jefferson, committed an unconstitutional act.   *Webb v. City of Maplewood*, 889 F.3d 483, 486-87 (8th Cir. 2018).   And he is entitled to qualified immunity, in any event, because he didn't violate the plaintiffs' clearly established constitutional rights.   *Kuessner v. Wooten*, 987 F.3d 752, 755 (8th Cir. 2021).

8.     In the absence of any federal question, the Court declines to exercise supplemental jurisdiction over the plaintiffs' Arkansas Civil Rights Act claims and state-law tort claims.   28 U.S.C. § 1367(c)(3); *McManemy v. Tierney*, 970 F.3d 1034, 1040-41 (8th Cir. 2020).

\*     \*     \*

The motion for summary judgment by Elliot, Boyles, and Bivens, *Doc. 38*, is denied.   The motion for summary judgment by Blytheville and Assistant Chief Jefferson, *Doc. 35*, is granted.   He is entitled to qualified immunity on the Fourteenth Amendment failure-to-protect and failure-to-train claims.   Those claims will be dismissed with prejudice, as will be the Fifth and Eighth Amendment claims and the

official capacity claims against him.   The state-law claims will be dismissed without prejudice.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

2 January 2024